# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**ELLIOTT L. JONES,**

      **Plaintiff,**

**vs.**                                                          **Case No.  1:15cv181-MP/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**

      **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Acting Commissioner

(Commissioner) of the Social Security Administration (SSA) denying

Plaintiff's application for Supplemental Security Income (SSI) pursuant to

Title XVI of the Social Security Act (Act).  After consideration of the record,

it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

This case has an extended procedural history, beginning on or about July 26, 1995, when Plaintiff filed applications for Disability Income Benefits (DIB) and SSI and was denied such benefits on March 21, 1996. *See* ECF No. 14 at 2-5. Subsequent DIB and SSI applications for benefits were denied after hearing(s) by an Administrative Law Judge (ALJ) that were subject to remand by the Appeals Council and a denial on February 25, 2005. ECF No. 14 at 3.

On or about October 27, 2005, Plaintiff filed a new application for SSI benefits, alleging disability beginning January 1, 2003. Tr. 12; *see* Jones v. Astrue, Case No. 1:08cv188-MP/GRJ (N.D. Fla.) (GRJ added May 27, 2011), ECF No. 12-2 at 12, 79, 114 in that case. (Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the upper right corner.) The application was denied initially and on reconsideration. Tr. 12. Plaintiff's counsel requested a hearing that was held on December 11, 2007. *Id.* On March 19, 2008, the ALJ issued an order denying Plaintiff's disability application. Tr. 12-20. On May 21, 2008, Plaintiff filed exceptions. Tr. 456-60. On June 30, 2008, the Appeals Council denied review. Tr. 5-8. On September 3, 2008, Plaintiff filed a Complaint in this Court, Jones v.

<u>Astrue</u>, Case No. 1:08cv188-MP/GRJ (N.D. Fla.).  On February 1, 2010, the magistrate judge recommended affirming the Commissioner's decision, which was adopted on March 11, 2010.  ECF Nos. 21 & 22 in that case. Plaintiff appealed to the Eleventh Circuit Court of Appeals and on April 14, 2011, the Commissioner filed a motion to remand the matter back to the Commissioner.  On May 9, 2011, the senior district judge entered an order remanding the case to the Commissioner for further development of the record.  ECF No. 42 in that case.

On July 6, 2011, the Appeals Council issued an order remanding the case to an ALJ.  After hearing was held on November 21, 2011, on March 28, 2012, ALJ Gregory J. Froehlich entered a decision denying Plaintiff's application for SSI benefits based on an amended alleged onset date of January 11, 2008.[1]  Tr. 611-614E.  On May 2, 2012, Plaintiff's counsel filed written exceptions with the Appeals Council.  Tr. 618-22.  On November 14, 2012, the Appeals Council remanded the case back to the ALJ.  Tr. 615-17.

On July 30, 2013, ALJ Froehlich held a video hearing with Plaintiff appearing and testifying with counsel in Gainesville, Florida, and the ALJ presiding from Jacksonville, Florida.  Tr. 543; 837-66.  Also testifying were

---

[1]  During the hearing, Plaintiff's representative confirmed that she "believe[d] the record is complete" and had no objections regarding the record.  Tr. 817E, 819.

Alfred G. Jonas, M.D., Board Certified in Psychiatry and Neurology, an

impartial medical expert, Tr. 732-33 (Resume), Tr.842-54, and Ted D.

Mitchell, an impartial vocational expert (VE), Tr. 726-29 (Resume), 862-65.

Plaintiff was represented by Pamela C. Dunmore, an attorney.  Tr. 837,

839.  Plaintiff's counsel amended Plaintiff's alleged onset date to January

12, 2008, although the ALJ considered, without objection, the date to be

January 11, 2008, the day before Plaintiff's 50th birthday.  Tr. 840.

At the outset of the hearing, the ALJ asked Plaintiff's counsel if she

had any objections to "anything in the record" and counsel said: "No

objections."  Tr. 839.  Dr. Jonas testified first.  Tr. 841.  Dr. Jonas requested

clarification regarding Plaintiff's current medication list.  Tr. 841.  Plaintiff

was questioned regarding his medications.  Tr. 842-44.  Dr. Jonas also

inquired as to the reasons Plaintiff stopped working as a nursing assistant

in January 2005.  Tr. 844.  Plaintiff stated that he stopped working because

he "had back problems which caused [him] to take a lot of different

medications for muscle relaxers and pain killers and -- when [he] wasn't --

wasn't able to miss days.  [He] missed a lot of days from work because of it

from oversleeping and stuff."  Tr. 845.  Plaintiff stated that his back was

giving him trouble and he had to stop.  *Id.*  Dr. Jonas continued his

testimony, Tr. 845-48, then he was asked by Plaintiff's counsel whether he,

Dr. Jonas, had enough information in the file to make an informed decision as to the severity of Plaintiff's impairments.  Tr. 848-49.  Dr. Jonas stated that "[t]he only thing about what [he] probably don't have enough information is the idea that he mentioned in his brief testimony that he had some back problems" and "that eventually caused him to stop being a CNA."  Tr. 849.  Dr. Jonas stated: "I don't really see any development of anything about his back so if he has significant back disease that would be functionally impairing then the answer to your question is correct, I don't have enough information about it."  Tr. 849.  Plaintiff's counsel continued to ask Dr. Jonas's questions and elicited responses.  Tr. 849-54.  At the end of Dr. Jonas testimony and in light of his testimony, Plaintiff's counsel requested the ALJ to refer Plaintiff for a consultative mental health examination.  Tr. 854.  The ALJ agreed that would be helpful.  Tr. 854-55.

Plaintiff testified during the same hearing and stated reasons why he was prevented from being able to work on a full-time basis since January 11, 2008, his amended alleged onset date.  He included problems with breathing and being hospitalized at weeks at a time or more three or four times in the year; the placement of a pacemaker and related heart issues; COPD; an inability to walk more than maybe five blocks with the break sometimes but at a very slow pace problems with his medications, daily

chest pains and dizziness on average of four days out of the week; and anxiety and depression.  Tr. 854-60.  He briefly mentioned having low back pain and having pain "[c]onstantly every day" for which he took Tramadol and other narcotics when he went to the emergency room.  Tr. 861.  He reported getting nauseous and dizzy as side effects from Tramadol. Tr. 861-62.

Toward the end of the same hearing, the ALJ announced that he would refer Plaintiff to a psychiatrist to be examined without cost to Plaintiff. Tr. 865.  Then, Plaintiff's counsel inquired of the ALJ: "As to the -- the pacemaker and the limitations, Your Honor, were you basically satisfied with the record as to the physical limitations based upon that impairment?" *Id.*  The ALJ responded "Yes, I believe so" and counsel had nothing further to offer.  *Id.*  The record was kept open for the results of the psychiatric consultative examination with a medical source statement and for no other reason, including but not limited to the inadequacy of the record, the sole point raised by Plaintiff in his memorandum.  ECF No. 14 at 5-8.

After the hearing, on September 18, 2013, Plaintiff underwent a mental status examination with Linda Abeles, Ph.D., "to assess [Plaintiff's] level of functioning."  Tr. 799-802.  Dr. Abeles submitted a report, Tr. 799-802, including a Medical Source Statement of Ability to do Work-Related

Activities (Mental), Tr. 803-05, considered by the ALJ.  Tr. 550-52; *see* Tr. 734-35.[2]

On December 3, 2013, the ALJ entered a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled since October 27, 2005, the date the application was filed.  Tr. 543-54.

On December 21, 2013, Plaintiff's counsel requested review of the ALJ's decision.  Tr. 538-39.  On June 25, 2015, the Appeals Council considered additional evidence submitted by Plaintiff and the reasons Plaintiff disagreed with the ALJ's decision and concluded:

> The Appeals Council concludes that the December 3, 2013 decision addressed the issues and complied with the instructions set forth in the orders by the District Court and the Council.  The case was remanded for medical expert evidence, which had been previously ordered, and the December 3, 2013 decision complied with this order (pages 6 and 9-10).  It is noted that the decision misstated the opinion of Dr. Jonas, stating the claimant was capable of work at the sedentary to light exertional level (pages 9-10).  However, Dr. Jonas actually testified he did not see that the claimant had any relevant limitations.  Additionally, the decision complied with the orders concerning further consideration of the Claimant's residual functional capacity, and, if warranted, additional vocational expert evidence (pages 5, 6, 9, and 12).
>
> The Appeals Council further considered the claimant's written exception.  On December 21, 2013, the claimant wrote that he was unable to perform substantial gainful activity.  The Appeals Council

---

[2]  On September 30, 2013, the ALJ provided Plaintiff's counsel with a copy of Dr. Abeles' evaluation and afforded counsel the opportunity, in part, to furnish the ALJ with "any additional records you which you wish me to consider (including a report from the treating physician)."  Tr. 734.

concludes this allegation is general in nature and not supported by the evidentiary record.

Records also show a request for an extension of time and that a 30-day extension was granted on February 19, 2014, but that no further written exceptions were forthcoming.

The Appeals Council takes note of the 12 pages of additional evidence submitted on January 22, 2015, covering the period from June 30, 2011, to August 29, 2012, at University of Florida Physicians and documenting implantation of a pacemaker on June 30, 2011.

We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of evidence of record. We found that this information does not provide a basis for changing the Administrative Law Judge decision. At his follow-up visit on October 27, 2011, the claimant was noted to have been doing well and on February 18, 2012, the claimant related occasional tachycardia, but was otherwise without complaint with no syncope, fatigue, dizziness, or lightheadedness. Later, on August 29, 2012, the claimant reported he had had no palpitations or chest pain since his previous visit. These relatively mild reports concerning the claimant's pacemaker are consistent with the finding of the Administrative Law Judge that the claimant's cardiac history and implantation of a pacemaker did not rise to the level of a severe impairment, a finding that the Appeals Council does not disturb (Finding No . 3).

Accordingly, the Council declines to assume jurisdiction in this case.

Tr. 532-35. The ALJ's decision is the final decision of the Commissioner.

S*ee* 20 C.F.R. § 416.1481.

On August 24, 2015, Plaintiff's counsel filed a Complaint in this Court

seeking review of the ALJ's decision. ECF No. 1. The parties filed

memoranda of law, ECF Nos. 14 and 25, which have been considered.

In his memorandum, Plaintiff referred to patient records that were included in the record before this Court in a prior case, <u>Jones v. Barnhart</u>, Case No. 1:05cv83-MP/AK (N.D. Fla.), and argues that the ALJ erred in not fully the developing the record with these patient records.  ECF No. 14 at 5-8.  A review of the docket and record in that case revealed the transcript/administrative record consists of two pages, the Certification page and "Court Transcript Index."  ECF No. 9 in that case.

On March 11, 2016, the Court entered an Order requiring Plaintiff to provide copies of the patient records Plaintiff referred to in his memorandum.  ECF No. 17.  On March 24, 2016, Plaintiff filed copies of two records, ECF Nos. 21-21-2, but parts of these records were not legible requiring another Order, ECF No. 22.  (Plaintiff did not file a copy of the record that states "Notes from treating physicians at the Shands Pain Clinic (Case No.:1:05-cv-83-MP/AK R547-551 show: "Chronic low back and leg pain."  ECF No. 14 at 7.)  On March 24 and 25, 2016, Plaintiff filed legible copies consisting of five pages of an initial office visit with Oscar B. Depaz, M.D., dated March 11, 2002, and a one-page undated record purportedly from Dr. Duncan, identified by Plaintiff to have been written on May 15, 2001.  Plaintiff clarified the latter year (May 15, 2011 to May 15, 2001). ECF Nos. 23, 23-1-2, & 24.

The Court takes judicial notice that in <u>Jones v. Barnhart</u>, Case No. 1:05cv83-MP/AK (N.D. Fla.), Plaintiff filed a memorandum and argued, in part, that the ALJ erred in finding that Plaintiff's alcohol and drug use was not material to his disability.  ECF No. 14 at 6-8 in that case.  Plaintiff relied, in part, on excerpts from patient notes from Dr. Depaz, dated March 11, 2002, another patient record, and an undated reference to a "Chart Review Assessment (R472-77) by Dr. Duncan, of the Shands Pain Clinic," now dated May 15, 2001, *see* ECF No. 24, which he relies on in this case. *Compare* ECF No. 14 at 7-8 in that case *with* ECF No. 14 at 5-7 (Plaintiff's memorandum).  The Commissioner filed a memorandum in the prior case and referred to patient notes (the same patient notes referred to by Plaintiff in his recent memorandum, ECF No. 14 at 5-7) of Dr. Depaz and Dr. Duncan's September 6, 2000, assessment of pain.  ECF No. 20 at 7-9, 11 in that case.[3]  The magistrate judge considered the ALJ's rejection of "the restricted physical limitations set forth in Dr. Depaz's assessment."  ECF No. 21 at 5 and 13 in that case.  The magistrate judge also noted that "the ALJ specifically rejected the opinion of Dr. Duncan."  ECF No. 21 at 5 in that case.  The magistrate judge rejected Plaintiff's arguments and

---

[3]  The references to Dr. Duncan's record and to the transcript/administrative record in that case by Plaintiff and the Commissioner in their respective memoranda are similar.  The Court is unable, however, to reconcile the two different dates for Dr. Duncan's record.

recommended that the Commissioner's decision be affirmed.  ECF No. 21

in that case.  No objections were filed and the recommendation was

adopted by the senior district judge.  ECF No. 22-2 in that case.  Plaintiff

was represented by the same counsel in both cases.  ECF No. 14 at 11 in

that case.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since October 27, 2005, the application date."  Tr. 545; *see* Bryant v. Soc. Sec. Admin., Case No. 1:08-cv-00173-MP-AK, 2010 U.S. Dist. LEXIS 52704, at *5 (N.D. Fla. May 25, 2010); Social Security Ruling (SSR) No. 83-20, 1983 SSR LEXIS 25, at *19 (1983).

2. "The claimant has the following severe impairments: chronic obstructive pulmonary disease, depression and anxiety."  Tr. 545.

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 546.  The ALJ determined that Plaintiff had *moderate* limitations in activities of daily living, social functioning and in maintaining concentration, persistence, or pace and that Plaintiff had *no* episodes of decompensation, which have been of extended duration.  *Id.*

4. "[T]he claimant has the residual functional capacity [RFC] to perform medium work as defined in 20 CFR 416.967(c), except that the claimant must avoid concentrated exposure to extreme heat, cold and respiratory irritants such as dusts, gases and fumes.  The claimant is limited to performing simple, routine, repetitive tasks.  The claimant retains the ability to relate adequately to coworkers and supervisors, but is limited to only

occasional contact with the public.  The claimant is able to deal with changes in a routine work setting."  Tr. 547.

5. "The claimant is unable perform any past relevant work" as a certified nursing assistant.  Tr. 553.

6.  "The claimant has at least a high school education and is able to communicate in English."  *Id.*

7. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform" such as dining room attendant, light exertional level and an SVP of two; kitchen helper, medium exertional level with an SVP of two; and floor waxer, medium exertion level with an SVP of two.  *Id.*[4]

8. "The claimant has not been under a disability, as defined in the Social Security Act, since October 27, 2005, the date the application was filed."  Tr. 554; *see supra* at 11, ¶ 1.

---

[4] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  A Specific Vocational Preparation (SVP) of two means "[a]nything beyond short demonstration up to and including 1 month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of one and two.  SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b); *see* 20 C.F.R. § 416.967(c) (definition for medium work).

## III.  Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  Moore, 405 F.3d at 1211.[5]

---

[5]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'"  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R.

§ 416.920(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[6]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the

---

[6]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Legal Analysis

### Substantial evidence supports the ALJ's decision.

Plaintiff argues that the ALJ erred in failing to develop the record regarding some of Plaintiff's past "old medical records establish the organic basis of [Plaintiff's] current pain testimony."[7]  ECF No. 14 at 5-8.  Plaintiff suggests that without these records, the ALJ "could not make a credibility determination that comports with the law of this circuit."  *Id.* at 8.

---

[7] *See supra* at 9-10.

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 416.912(a); <u>Moore v. Barnhart</u>, 405 F.3d at 1211; *see also* <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1276 (11th Cir. 2003).  On the other hand, an ALJ has a clear duty to fully and fairly develop the administrative record.  <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995); 20 C.F.R. § 416.912(d).

In completing the five-step sequential evaluation process, the ALJ has a duty to develop a full and fair record, regardless of whether the claimant is represented by counsel, <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981), although there is no special or heightened duty to develop the record when a claimant is represent by counsel as here. <u>Brown v. Shalala</u>, 44 F.3d at 934-35.  The ALJ's failure to fulfill his duty to fully develop the record, however, only necessitates a remand if "the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Id.* at 935; <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422-23 (11th Cir. 1997).  The question here is whether there are "the kinds of evidentiary gaps in the record which have resulted in prejudice sufficient to justify a remand."  *Id.* at 1423.

Despite having an opportunity to do so prior to, during, and after the July 30, 2013, hearing, Plaintiff did not object to the sufficiency of the record that was before the ALJ or otherwise request the ALJ to supplement the record with other, older medical records. *See, e.g.*, Tr. 839; *see also* Tr. 917E, 819 (Nov. 21, 2011, hearing) and Tr. 734-35.  The ALJ agreed with Plaintiff's counsel's suggestion that Plaintiff be referred for a post-hearing psychological consultative examination and medical source statement, Tr. 854, 866, which was accomplished and considered by the ALJ.  Tr. 550-52.

In his memorandum, Plaintiff refers to an excerpt from five pages of patient notes from Dr. Depaz, dated March 11, 2002, which also appears in an earlier case before this Court, Jones v. Barnhart, Case No. 1:05cv83-MP/AK (N.D. Fla.), at 560-64.  ECF No. 14 at 5-6.  Plaintiff refers to two other records from that same case, Case No. 1:05cv83-MP/AK, at 472-77 (specifically page 476 purportedly from Dr. Duncan now dated May 15, 2001), *see* ECF No. 23-2, and a reference to patient notes at pages 547-51, not included in this record.  ECF No. 14 at 6-7; *see supra* at n.3.[8]  It

---

[8]  The ALJ is required to develop the claimant's complete medical history for at least 12 months preceding the month in which the application was filed and to make every reasonable effort to help the claimant get medical reports from the claimant's own medical sources when permission is given.  *See* C.F.R. § 416.912(d).  The patient notes from 2001 and 2002 pre-date October 27, 2005, the date the SSI application was filed,

appears that patient records from Drs. Depaz and Duncan were considered by this Court in Case No. 1:05cv83-MP/AK.  *See supra* at 9-11.

Based solely on these records (2001 and 2002), Plaintiff concludes that the ALJ erred when he did not fully develop the record with these documents, an issue Plaintiff raised for the first time before this Court. Except for claiming that the ALJ could not properly assess Plaintiff's credibility without these records, ECF No. 14 at 8, Plaintiff does not argue that there is a nexus between consideration of these dated medical records, or a lack thereof, before the ALJ and the ALJ's assessments while proceeding through the five-step sequential evaluation process, including but not limited to the ALJ's assessment of the severity of Plaintiff's impairments, the ALJ's RFC assessment, and his assessment that Plaintiff is capable of performing work.  Graham v. Apfel, 129 F.3d at 1423.  Plaintiff does not explain how consideration of these records would have changed the result in this case.  ECF No. 14 at 5-8.  The record contains sufficient evidence for the ALJ to have made an informed decision regarding Plaintiff's alleged disability.  Tr. 545-54.

---

well beyond 12 months and well before Plaintiff's amended alleged onset date of January 11, 2008, Tr. 543.

Finally, although the ALJ has a duty to properly develop the record, Plaintiff's counsel/representative, who represented Plaintiff during his quest for disability benefits for more than ten years[9] and should have been familiar with the state of the record before ALJ Froehlich, did not ask the ALJ to include additional, older medical records for his consideration despite opportunities to do so.  *See generally* Mosley v. Acting Comm'r of Soc. Sec. Admin., No. 15-10850, 2015 U.S. App. LEXIS 21193, at *8-10 and n.1 (11th Cir. Dec. 8, 2015) (unpublished); *see also* Wright-Hines v. Comm'r of Soc. Sec., 597 F.3d 392, 396 (6th Cir. 2010).  In fact, counsel was very familiar with the records from Drs. Depaz and Duncan having referred to them in a memorandum filed in a prior case before this Court. *See supra* at 9-11.  The ALJ cannot be faulted for failing to consider evidence that he never saw, notwithstanding Plaintiff's argument.  *See generally* Wilson v. Comm'r of Soc. Sec., No. 15-14474 (11th Cir. Apr. 12, 2016) (unpublished).  Plaintiff has not established clear prejudice to necessitate a remand.  Mosley v. Acting Comm'r of Soc. Sec. Admin., 2015 U.S. App. LEXIS 21193, at *10 (citing Brown v. Shalala, 44 F.3d at 935).

---

[9]  *See, e.g.*, Tr. 611, 817A; Jones v. Barnhart, Case No. 1:05cv83-MP/AK (N.D. Fla.) (docket) and ECF No. 14 at 11 in that case; Jones v. Astrue, Case No. 1:08cv188-MP/GRJ (N.D. Fla.) (docket) and ECF No.12 at 15 in that case.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on April 28, 2016.


s/ Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**